on behalf of the people of the state of Illinois. This is the attorney's office. The state failed to prove beyond a reasonable doubt that Michael Wilson conspicuously possessed the crack cocaine police found in a magnetic box buried in a bed frame located within a basement bedroom where they found Wilson and three other people, two women and two men. Police did not see Wilson using or touching any drugs that they came upon. Importantly, no mailings linked Wilson to the house. And in total, police found seven people within the house. There were multiple bedrooms on top of that. Two to three bedrooms upstairs and two downstairs. If you look at our precedents, this is a disturbingly familiar fact pattern. And we seem to have settled on the doctrine that there's enough circumstantial evidence to support a drug conviction under similar facts. Every case is slightly different facts. But what seems to be key here is the Social Security card. And why would that be loose if it's not your own home? And maybe tell us why that wasn't sufficient to justify the conviction under our standard of use. Sure, sure. While it is viewed in the light most favorable to the state, we can't forget that the state bears the burden of proof. And a Social Security card, which is on top of a nightstand, not in a nightstand. Arguably, if you lived in the house, you might have it inside of the nightstand. While the prosecutor argued that this Social Security card, which importantly didn't have an address, linked him to the house because people normally keep their Social Security cards in their houses, there's no testimony to that effect. Again, it's the state's burden of proof. I understand just as the way you said that there are cases under similar fact patterns where you have affirmed. I would arguably say no. In point of fact, there are several cases which have been reversed. One of them being people who Fernandez, where greater personal effects were not deemed to be sufficient evidence of habitation to link the defendant to the home. Did he ever admit anything, the defendant, that this was his residence? No. Is there any proof whatsoever that he lived there, that he owned it? Anything in the record? Nothing. Is there an address on the Social Security card? No. And yet there was nothing whatsoever. There were seven other people in this house. There was generic clothing. What about the clothes that were found, the male clothing that was found in the bedroom? Any of the clothing linked to him? No, absolutely not. There were two other men in that room at the same time, right? Correct. And a third person that the police first came upon and several other people. In total, the police said they came upon seven individuals. That bedroom. And it should be noted that there was also female clothing within that room as well. So it's generic clothing, male and female. We have no mailings. We have a Social Security card, which doesn't bear an address. Greater effects, a passport, an insurance card, and keys on the defendant, in the case of people named Fernandez, were not found sufficient to link that defendant to the home. It's true, police found several pieces of tin foil and plastic bags from the top of the bed in the bedroom that he was, and an adjacent bedroom, some drug paraphernalia. They cut an agent's steel wall, plastic bags, a glass pipe. But importantly, as Wilson was acquitted of the intent to deliver, there was no evidence linking him to that adjacent bedroom. As for the small pieces of tin foil and plastic baggies, it's important to note that there was no drug use or any other evidence that this was used. We would expect maybe open drugs, if that's what they were used for. And this court has held that where there's no evidence that the defendant controls the premises, mere presence in the vicinity of a controlled substance, even combined with knowledge of the presence of narcotics, this is in People v. Tate, is insufficient to sustain the state's burden of proof. In Tate's, police came across a defendant and another individual at a dining room table where there were clumps of narcotics, not just tin foil, plastic baggies or such, actual narcotics. And elsewhere in plain view throughout the house, they found drug paraphernalia and drugs. There was also a third individual that was arrested in the kitchen, but the police found that that was not, I'm sorry, the court found that that was insufficient evidence to sustain the state's burden of proof. The court held no cases turned on the volume of drugs or drug paraphernalia present as indicative of a defendant's constrictive possession, where no other evidence connects the defendant to the contraband. The court in Tate's found that at most there was evidence that the defendant was aware of a drug operation. Similarly, here too, at most, Wilson was aware that at some point in time drugs had been packaged in the home. But where we have drugs that are highly hidden and no other mailings or evidence linking him to the home, and generic clothing which could have belonged to any of the seven people in the house, we would simply submit that the state failed to sustain their burden of proof. We ask for a reversal. Thank you. Any further questions? No, thank you. Thank you. Mr. Hodes. I believe that there was ample, my position is that there was ample evidence to prove that the defendant constructively possessed the cocaine that was recovered inside of the magnetic box attached to the bed. What was that evidence? The most potent evidence that was obviously the Social Security card, but there was also defendant's presence in the room, and that distinguishes this. But wait a minute. Wait a minute. There were two men in that room, or was it three? Either two or three. So does the presence of his Social Security card on the nightstand in and of itself suggest that he possessed and controlled the drugs in the room? Is that what you're saying? I mean, other than the Social Security card, what else suggests that he possessed and controlled the drugs that were found hidden in the bed? Well, obviously it's the combination of all the evidence, as Your Honor is alluding to. So delineate that for me, because other than the Social Security card, I have to tell you I'm having trouble. The presence is an important thing. I mean, the cases that counsels are referring to, is a case where the defendant wasn't present in the room, and the appellate court expressed a lot of concern that because the defendant was not present there, there was a serious doubt, despite all the evidence that linked him to the house, that he knew about the drugs that were found at the time they were found there and that he had control of them at that time. But such a presence is not sufficient. Exactly. But what I'm saying in this case is we have presence plus the indicia that the defendant was in control of the room and that it was his room, which is the Social Security. And what is that indicia other than the Social Security card? That's what I'm trying to get you to tell me. I think you're right, but that is certainly the strongest indicia. We have the fact that it was the male clothing in the room. Was there any evidence or any testimony that the clothing belonged to him? And in that room, there were two other men in that room. My reading of the record was that there was one other man in the room. Okay. So there was one that was one and there was two. Right. The fact is there was more people in that room than just the defendant that the clothing could have belonged to. And also, the law isn't that we have to prove that he was in exclusive possession. However, exclusive possession does not mean that he was in sole possession. In the Supreme Court's cases, Gibbons and Schmaltz, both the defendants, all of the defendants, I guess. For example, again, other than the Social Security card, what are we talking about here? There was male clothing, that's true, but there were two men in that room. And the defendant was present. And so other than the Social Security card, what is the other indicator that he was in control and possession of the drugs that were found? There's also the stuff that was on top of the bed. Again, not the strongest indicator, but it points to the drugs. Why was that linked to him? That doesn't, that relates to all the people in the room, I believe. But, again, the fact that the other people might have also been in control doesn't exclude the possibility that he was in control. And the case is, the question on appeal is whether the evidence was sufficient to prove that he was in control, not whether or not somebody else might also have been in control. So in your view, then, the presence of the Social Security card proves beyond a reasonable doubt that he was in possession and control of the drugs that were hidden in that bed frame, because that's basically all you have. Is that your argument? My argument is that that's the Social Security card is what distinguishes, is the critical piece of evidence on the personal effects and the drug paraphernalia on top of the bed that would suggest, as it was argued below, that perhaps when the doors were opened, they quickly shoved the drugs under the bed in his room. And who would, excuse me? Go ahead, go ahead. That was what was going on there, and that was a reasonable inference to draw under the facts, because it was a forced entry, but there's no answer. I mentioned earlier to your opponent that this case presents what's becoming a disturbingly similar fact pattern in terms of drug arrests on evidence of a quantity and quality that probably could be improved upon. And I know in some other cases we've had something usually a little bit better, like a lease, and it doesn't seem like this was prosecuted at the trial court level. No one took the next step and said, let's present a deed or a lease or find a neighbor who will testify, oh, yeah, that's his house, and he lives there. That's true. And so far we're solving more than what we have. I agree. That's true. But at the same time, the real question isn't whether he owned the house. He could own the houses, or he could have significant links to the houses in a case like the one that counsel mentioned, Fernandez. But the real concern that the court had wasn't the issue of ownership. It was that they were concerned that maybe he owned the house, but all the stuff was going on at the time that they burst into the home, and he wasn't aware of it and wasn't in control of it. And those concerns were assuaged by the fact that in this case the defendant was present, and that's why I think the defendant's presence is a very important fact. And that's why the Supreme Court in Schmultz and more recently in Gibbons has viewed presence cases differently. And, yes, real presence is insufficient under a case like Tate's, but when you've got presence coupled with something like what we have here, which, yes, it's just a Social Security card, but it's a very important piece of evidence. I mean, that's not something that one takes with them like a driver's license, like a passport even, to use as ID. It doesn't have your picture. It also doesn't have an address on it. By the way, no one's Social Security card has an address on it as far as I know. So it's not that this Social Security card was somehow lacking. It's something you keep where you are residing as something you would use. It is not a portable piece of ID that one would take with them if I went out and visited someone or I was worried that I might need to present the ID to buy something or to get credit. Maybe it just came from the Social Security office. I mean, who knows? That's possible, but the real question on appeal, again, is whether it was a reasonable inference for the trial court to draw, not whether it's possible that, you know, it can be explained away some other way. And the question is, did the trial court draw reasonable inferences based on the totality of the evidence before? And our position is that in this case, the nexus that the trial court found, given all of this evidence, and the trial court saw pictures that I hadn't looked at in a long time, and it was able to envision the room and envision all this stuff, and it found that this proved that the defendant had constructive possession over the room. And those inferences are entitled to a certain degree of deference on appeal, and we believe that those inferences were proper and that this court should affirm. So I would respectfully request that this court affirm. Thank you so much. Thank you, Counsel. Bye-bye. Yes. Very briefly, Your Honors. It is true that we do view the evidence in the right most favorable to the State, but again, the State has a burden of proof, which it simply did not sustain with the evidence here. My opposing counsel mentioned that ownership is not necessary. Well, if there's no ownership, there must be evidence that the defendant knew of the drugs, knew of the hidden drugs or did something. There was a case where they found a defendant in an area that was not his, and he kind of hid the drugs. There's no evidence. The other defendant, the State would like you to believe that there was some kind of hiding of drugs. There's simply no evidence of that in this record. There was no evidence that the defendant knew of the drugs that were being hidden here. And it's not just that the defendant's presence that distinguishes this case from Tate's and Fernandez's. In Tate's or, I'm sorry, Fernandez's, in Fernandez's there was a lot more evidence, a key that the defendant had and pictures. Counsel, was there any effort made to determine whose clothes, who the male clothing in the room belonged to? Absolutely not. And in fact, I'd like to remind you that there was female clothing as well. So, and there was seven people in that house. So if there are no further questions, we would again ask for an outright reversal. Thank you, counsel, from both sides. The matter will be taken under advisement. And the court having no other cases on the docket this afternoon, court will stand in recess.